FIRST NATIONAL BANK at Paris *v.* Paul C. ADAIR,
et al.

CA 92-910                                854 S.W.2d 358

Court of Appeals of Arkansas
Division II
Opinion delivered May 26, 1993
[Rehearing denied June 30, 1993.]

*Warner & Smith*, by: *G. Alan Wooten* and *Kathryn S. Kissell*, for appellant.

*Bullock & Van Kleef*, by: *John D. Van Kleef* and *Bunny Bullock*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from a judgment entered against appellant, the First National Bank at Paris (hereinafter "Bank"), in the principal amount of $142,556.65. In its first two issues on appeal, the bank contends that the trial court erred in failing to either grant its motion for a directed verdict or enter a judgment notwithstanding the verdict in its favor because appellees failed to present sufficient proof of a joint venture. The bank further contends that the trial court erred in not granting its motion for a directed verdict because any promise to pay the debt of another must be in writing and there was no writing in this case. On cross-appeal, appellees contend that the trial court erred in denying their motion for partial summary judgment. Because we agree that there was insufficient evidence offered to establish the

existence of a joint venture, we reverse on direct appeal. As the issue raised by appellees is not properly before us, we affirm on cross-appeal.

In June of 1987, the bank loaned $550,000 to Pine Ridge Farms, Inc. Forty percent of the loan was guaranteed by the Small Business Administration. Pine Ridge Farms was in the business of organically raising chickens, and was owned by David Farrington, now deceased, and his wife. Appellees were suppliers of products to the farm and they filed this suit against the bank claiming that the bank was liable to them for sums owed by the farm, which had declared bankruptcy. In the complaint, appellees predicated the bank's liability on the allegation that the bank had entered into a joint venture with Farrington for the operation of the farm. Appellees also claimed that they were entitled to damages based on the tort of bad faith, and also fraud.

The bank thereafter filed a motion for summary judgment contending that the statute of frauds precluded recovery because there was no writing by which it had agreed to assume liability for the farm's debts. The bank further contended that it and Farrington had not formed a joint venture, and that its relationship to the farm was simply that of lender and borrower. Appellees also filed a motion for partial summary judgment in which they alleged that the bank was collaterally estopped from denying the existence of a joint venture as that question had been decided adversely to the bank in a previous lawsuit. Finding that there remained genuine issues of material fact, the court denied the bank's motion for summary judgment. From the documentation presented by appellees in support of their motion and the opposing affidavits submitted by the bank, the court could not ascertain the applicability of collateral estoppel, and it tentatively denied appellees' motion for partial summary judgment, leaving the record open for further discovery and the presentation of additional proof on that issue. At trial, appellees abandoned their claims of fraud and bad faith, and the only theory of recovery upon which the jury was instructed was that of joint venture. The jury returned a verdict in favor of appellees.

The primary thrust of this appeal is the bank's contention that there was insufficient evidence offered to establish that it and Farrington were engaged in a joint venture. Thus, it is argued that

the trial court erred in denying motions for a directed verdict and judgment notwithstanding the verdict on that issue.

█ On appellate review of a trial court's denial of a motion for a directed verdict or a motion for a judgment notwithstanding the verdict, we must determine whether the verdict is supported by any substantial evidence. *Tremco, Inc.* v. *Valley Aluminum Products Corp.*, 38 Ark. App. 143, 831 S.W.2d 156 (1992). In so doing, we examine the evidence, along with all reasonable inferences deducible therefrom, in the light most favorable to the party against whom the motion is sought. *See id.*

█ In order for a business enterprise to constitute a joint venture, the following elements must be present: (1) two or more persons combine in a joint enterprise for their mutual benefit; (2) right of mutual control or management of the venture; and (3) an expressed or implied understanding that they are to share in the profits or losses of the venture. *Burge* v. *Pack*, 301 Ark. 534, 785 S.W.2d 207 (1990); *Tackett* v. *Gilmer*, 254 Ark. 689, 496 S.W.2d 368 (1973). The burden of proving the existence of a joint venture rests on the party asserting this relationship. *See Burge* v. *Pack, supra.*

At trial, it was shown that bank officials held almost daily discussions with Farrington and that frequent visits were made to the farm. These officials also spoke at a public meeting in an attempt to obtain an AIDC grant for the farm. Further, it was established that the bank collected the farm's accounts receivable. The bank sent letters informing those indebted to the farm of the bank's security interest in the accounts receivable, and directed them to send payment directly to the bank. The bank maintained the checkbook for one of the farm's three accounts, and required that checks for expenditures over $200 be cosigned by a bank official. There was testimony suggesting that the bank offered advice on the hiring of employees. There was also evidence that the bank tolerated a $77,000 overdraft in the farm's accounts, and that it retained some $77,000 more than it was initially allocated under the SBA guarantee agreement as payment for monies it had advanced the farm.

██ The primary attribute and necessary condition for a joint venture is the element of joint, not several, profit sharing. *Batterman* v. *Wells Fargo AG Credit Corp.*, 802 P.2d. 1112

(Colo. Ct. App. 1990). *Accord Tackett* v. *Gilmer supra.* Thus, it is generally understood that the relationship of borrower and lender does not establish a joint venture. *Gainesville Carpet Mart* v. *First Federal Savings & Loan Ass'n. of Gainesville,* 174 S.E.2d 230 (Ga. Ct. App. 1970). *See also e.g. Burge* v. *Pack, supra; American Insurers Life Ins. Co.* v. *Regenold,* 243 Ark. 906, 423 S.W.2d 551 (1968). As was succinctly stated by the Minnesota Supreme Court:

> They [the creditors] are entitled to a return of the money loaned or advanced, and stand to lose only in the event there shall be no net profits. The money advanced is not contributed to the enterprise, and must be repaid whether the venture is a success or failure.
>
> . . . .
>
> We therefore have no difficulty in holding that a creditor, whose interest in a business venture is in receiving back his debt, is not engaged in a joint venture with a debtor merely because he secures an assignment of the proceeds of the sales and from time to time gives advice, pays bills, and takes other measures to protect his security.

*Treichel* v. *Adams,* 158 N.W.2d 263, 266 (Minn. 1968).

In the case at bar, there was no evidence that there was an express agreement for the bank to share in the profits or losses of the farm, nor was there evidence from which such an agreement can be inferred. Contrary to appellees' argument in support of the judgment, we do not consider the evidence that the bank permitted an overdraft situation to exist or that it retained monies as payment for an advance loan as being indicative of an intent to share in the profits or losses of the farm. Such evidence lacks sufficient mutuality to reflect an intent to jointly share in the profits or losses. Although it cannot be doubted that the bank focused a great deal of attention on the farm, it was not shown that the bank's interest extended beyond its desire for the business to succeed so that its loan might be repaid. In the absence of any kind of agreement to share in the profits or losses, we can find no substantial evidence to support the judgment. Consequently, we reverse.

The bank next argues that the trial court erred in not granting its motion for a directed verdict because there was no writing by which it had agreed to assume responsibility for the farm's debts. *See* Ark. Code Ann. § 4-59-101 (1991). Since we have reversed the judgment for the reasons discussed above, it is not necessary to address this point.

In their cross-appeal, appellees contend that the trial court erred in denying their motion for partial summary judgment. In this motion, appellees argued that collateral estoppel should prevent the bank from relitigating the existence of a joint venture because that question had been decided adversely to the bank in a previous lawsuit. In making this argument, appellees sought to use collateral estoppel as an offensive weapon, rather than as the defensive tool for which it is more commonly applied. In *Fisher* v. *Jones*, 311 Ark. 450, 844 S.W.2d 954 (1993), our supreme court recognized that the offensive use of collateral estoppel had been approved by the Supreme Court in the case of *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322 (1979), but it expressed no opinion on the matter as the issue was not squarely before it. We also need not decide whether collateral estoppel was applicable here. It has long been held that the denial of a motion for summary judgment is not an appealable order or subject to review after a trial on the merits. *Estate of Hastings* v. *Planters & Stockmen Bank*, 307 Ark. 34, 818 S.W.2d 239 (1991). Therefore, we conclude that this issue is not properly before us. Moreover, it appears that appellees abandoned this issue as the record reflects that no additional evidence was offered, as was contemplated by the trial judge and the parties, and no further, definitive ruling was sought or obtained. We will not consider arguments on appeal that were not fully developed at the trial level. *Id.* And, the burden of obtaining a ruling on a motion is upon the movant, and the failure to secure a ruling constitutes a waiver, precluding its consideration on appeal. *Kulbreth* v. *Purdom*, 305 Ark. 19, 805 S.W.2d 622 (1991).

Reversed on Direct Appeal; Affirmed on Cross-Appeal.

PITTMAN and ROBBINS, JJ., agree.